THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

Priority
Send
Clsd
Enter
JS-5/JS-6
JS-2/JS-3

JUN 12 2000

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.F. LEHMAN & COMPANY, INC., a Delaware corporation; J.F. LEHMAN EQUITY INVESTORS I, L.P., a Delaware limited partnership; J.F. LEHMAN CO-INVEST PARTNERS I, L.P., a Delaware limited partnership; and PARIBAS PRINCIPAL INCORPORATED, a New York corporation,<br><br>            Plaintiffs,<br><br>      v.<br><br>THOMAS F. TREINEN, an individual; THOMAS J. TREINEN, an individual; JOHN M. CUTHBERT, an individual; JOHN T. VINKE, an individual, and DOE 1 through Doe 10, inclusive<br><br>            Defendants. | NO.   CV 99-13046-WJR (JWJx)<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS, DENYING DEFENDANTS' JOINT MOTION TO STRIKE, AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT MOTION FOR JUDICIAL NOTICE |

ENTERED
CLERK, U.S. DISTRICT COURT

JUN 13 2000

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

Docketed
Copies / NTC Sent
JS - 5 / JS - 6
JS - 2 / JS - 3
CLSD

     On May 17, 2000, Defendants' motions to dismiss, joint motion to strike, and joint motion for judicial notice came on for a hearing.  After oral argument, the Court took the motions under submission.

35

1     The Court has fully considered the arguments, authorities, and

2 exhibits submitted in the briefing and has fully considered the

3 oral argument.  Based on the foregoing, the Court grants in part

4 and denies in part the motions to dismiss, denies the joint motion

5 to strike, and grants in part and denies in part the joint motion

6 for judicial notice.

7 **I.   Background**

8     This is a fraud case arising out of the proposed sale of

9 Special Devices, Inc. ("SDI"), a company that designs and

10 manufactures engineered pyrotechnic devices that are utilized to

11 deploy automobile air-bags or to provide precision detonations in

12 various aerospace products.  See SAC ¶ 6.  Plaintiffs are J.F.

13 Lehman & Company, Inc. ("JFLC"), J.F. Lehman Equity Investors I,

14 L.P. ("JFLEI"), JFL Co-Invest Partners I, L.P. ("JFLCP"), and

15 Paribas Principal Inc.[1]  See SAC ¶ 3.  Defendants are Thomas F.

16 Treinen ("Treinen Sr."), the President, CEO, and Chairman of the

17 Board of SDI, Thomas J. Treinen ("Treinen Jr."), a Vice President

18 of SDI, John M. Cuthbert, President of the Automotive Division and

19 a director of SDI, and John T. Vinke, Vice President and CFO of

20 SDI.[2]  See SAC ¶ 4.  On March 6, 2000, Plaintiffs filed a Second

21 Amended Complaint alleging causes of action for federal securities

22 fraud (claims 1-2), violation of the Racketeer Influenced and

23

24     [1]JFLC is a Delaware corporation with its principal place of
business in Virginia.  JFLEI and JFLCP are Delaware limited

25 partnerships with their principal place of business in Virginia.
Paribas is a New York corporation with its principal place of

26 business in New York.

27     [2]Defendants are all California citizens.

1   Corrupt Organizations Act (claim 3), and common law fraud (claims

2   4-6).[3]

3      To secure a needed capital infusion, Defendants entered into

4   negotiations with Plaintiffs for the recapitalization of SDI and

5   the concurrent acquisition of a controlling interest in SDI by

6   Plaintiffs.  See Second Am. Compl. (hereinafter "SAC") ¶ 8.  To

7   facilitate  their  acquisition  of  that  controlling  interest,

8   Plaintiffs  created  SDI  Acquisition  Corporation  ("Acquisition

9   Corp."), which entered into a Merger Agreement with SDI on June 19,

10  1998.  See SAC ¶¶ 10, 45.  On December 15, 1998 Plaintiffs also

11  executed a Rollover Stockholders Agreement.  See SAC ¶ 58.  The

12  recapitalization of SDI was completed on December 15, 1999.  See

13  SAC ¶ 57.

14     Plaintiffs allege that as a result of Defendants' fraud, they

15  purchased SDI stock at a price far in excess of its actual value.

16  See SAC ¶ 10.  Specifically, Plaintiffs allege that Defendants

17  misrepresented SDI's compliance with federal, state, and local

18  environmental  protection  laws  and  permitting  requirements  and

19  overstated SDI's earnings for the fiscal year ending October 31,

20  1998.  See SAC ¶ 10.

21  **I.   Legal Standard on a Motion to Dismiss**

22     Under Federal Rule of Civil Procedure 12(b)(6), a party may

23  bring a motion to dismiss a plaintiff's claims on the ground that

24  the plaintiff's allegations "fail to state a claim upon which

25

26  _____

    [3]Plaintiffs filed their original Complaint on December 13,

27  1999 and their First Amended Complaint on January 26, 2000.

28                                 3

1   relief can be granted." FED. R. CIV. P. 12(b)(6). But courts

2   generally view Rule 12(b)(6) motions with disfavor and grant them

3   only in extraordinary cases. See United States v. Redwood City,

4   640 F.2d 963, 966 (9th Cir. 1981); United States v. White, 893 F.

5   Supp. 1423, 1428 (C.D. Cal. 1995).

6       Generally, "[a] complaint should not be dismissed for failure

7   to state a claim unless it appears beyond doubt that the plaintiff

8   can prove no set of facts in support of his claim which would

9   entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46

10  (1957); see also, Parks Sch. of Bus., Inc. v. Symington, 51 F.3d

11  1480, 1484 (9th Cir. 1995); Elias v. Connett, 908 F.2d 521, 527

12  (9th Cir. 1990). Thus, dismissal is proper where there is either

13  a "lack of a cognizable legal theory" or "the absence of sufficient

14  facts alleged under a cognizable legal theory." Balistreri v.

15  Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

16      In reviewing a Rule 12(b)(6) motion, the Court must construe

17  all allegations contained in the complaint in the light most

18  favorable to the plaintiff and must accept as true all material

19  allegations in the complaint as well as any reasonable inferences

20  to be drawn from them. See, e.g., Hospital Bldg. Co. v. Trustees

21  of the Rex Hosp., 425 U.S. 738 (1976); Kugler v. Helfant, 421 U.S.

22  117 (1975); NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir.

23  1986). Thus, no matter how improbable the facts alleged are, the

24  Court must accept them as true for purposes of the motion. See,

25  e.g., Nietzke v. Williams, 490 U.S. 319, 326-27 (1989).

26      But the Court need not accept unreasonable inferences or

27

28                                  4

1  unwarranted deductions of fact.   See Western Mining Council v.
2  Watt, 643 F.2d 618, 624 (9th Cir. 1981).  Thus, the Court does not
3  have free reign simply to "use its imagination" in order to
4  determine what, though not alleged or properly inferred from a
5  complaint, a plaintiff might possibly be getting at, either
6  factually or in terms of legal theory.  See County Nat'l Bank v.
7  Mayer, 788 F. Supp. 1136, 1139 (E.D. Cal. 1992) (holding that it is
8  "not proper for the court to assume that `the [plaintiff] can prove
9  facts which [he or she] has not alleged, or that the defendants
10  have violated the . . . laws in ways that have not been alleged.'"
11  (citing Associated Gen. Contractors v. California State Council,
12  459 U.S. 519, 526 (1983))).  Similarly, the Court need not accept
13  as true conclusory allegations or legal characterizations.  See,
14  e.g., Sherman v. Yakahi, 549 F.2d 1287, 1290 (9th Cir. 1977);
15  Transphase Sys., Inc. v. Southern Cal. Edison Co., 839 F. Supp.
16  711, 718 (C.D. Cal. 1993).

17       Furthermore, the Court may consider as part of the pleadings
18  to be reviewed any material that is properly submitted as part of
19  the complaint, such as exhibits.  See Amfac Mtg. Corp. v. Arizona
20  Mall of Tempe, 583 F.2d 426 (9th Cir. 1978).  The Court may also
21  take judicial notice of matters of public record outside the
22  pleadings without converting the motion to dismiss into one for
23  summary judgment.  See Mullis v. U.S. Bankruptcy Court, 828 F.2d
24  1385, 1388 & n.9 (9th Cir. 1987); Mack v. South Bay Beer Distribs.,
25  798 F.2d 1279, 1282 (9th Cir. 1986) (abrogated on other grounds).
26  Moreover, a defendant may attach to its motion to dismiss a
27
28                                    5

document referred to in the plaintiff's complaint to show that it does not support the plaintiff's claim. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994).   The court's consideration of such a document does not convert the motion to dismiss into a motion for summary judgment. See id.

Finally, although the Court may allow parties leave to correct defects in their claims, there is no automatic right to do so, and leave to amend may be denied if amendment would be futile. See, e.g., Wages v. Internal Revenue Serv., 915 F.2d 1230, 1235 (9th Cir. 1990); Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).

## II. Application of Dismissal Standard to Plaintiffs' Second Amended Complaint

This Court is asked to determine whether Plaintiffs' Second Amended Complaint alleges facts sufficient to state a claim. Defendants Treinen Jr., Cuthbert, and Vinke jointly move to dismiss Plaintiffs' entire complaint on the grounds that 1) Plaintiffs have failed to allege sufficient facts demonstrating that Defendants acted with scienter or made false or misleading statements with regard to SDI's environmental compliance; 2) Plaintiffs failed to adequately plead scienter, materiality, or reliance with regard to the alleged accounting misstatement; and 3) Plaintiffs cannot state a claim for a violation of RICO. Defendant Treinen Sr. joins this joint motion and also moves separately to dismiss Plaintiffs' fraud claims on the grounds that Plaintiffs failed to adequately plead scienter and justifiable reliance. The jointly moving Defendants also join Defendant Treinen Sr.'s motion.

6

A.   <u>Plaintiffs' Fraud Claims Relating to SDI's Environmental</u>
     <u>Compliance</u>

Plaintiffs allege that at various times in 1998, Defendants represented that SDI was in substantial compliance with environmental laws and permitting requirements related to the handling, storage, and disposal of hazardous and toxic substances. This representation was included in SDI's January 28, 1998 Form 10-K, its March 15, 1998 Confidential Information Memorandum, its June 1998 Registration Statement, and its August 1998 Offering Memorandum. <u>See</u> SAC ¶¶ 14, 26, 38-39. Plaintiffs allege that Defendants similarly represented in the June 1998 Merger Agreement between Acquisition Corp. and SDI, and in proxy statements filed with the SEC on August 18, 1998 and November 10, 1998, that SDI was in compliance with all applicable environmental laws and held all material permits. <u>See</u> SAC ¶¶ 40-41, 45.

Plaintiffs also allege that certain defendants misrepresented SDI's environmental compliance during a due diligence review conducted by Plaintiffs' attorneys, Paul, Weiss, Rifkind, Wharton & Gerrison ("Paul Weiss"). <u>See</u> SAC ¶ 19. For example, Plaintiffs allege that on two separate occasions between June 15, 1998 and June 18, 1998, Defendant Treinen Sr. represented in telephone conversations to Gaines Gwathmey of Paul Weiss that SDI had been and was disposing of all hazardous waste through a licensed treatment, storage, and disposal facility and that SDI had not been and was not using an un-permitted tank at its Newhall, California facility to destroy hazardous waste. <u>See</u> SAC ¶¶ 23-24. Similarly, Plaintiffs allege that on June 10, 1998, Defendant Vinke allegedly

represented to Gaines Gwathmey of Paul Weiss and to Michael Burwell and Kirk Brunsen of Price Waterhouse, Plaintiffs' accountants in the recapitalization transaction, that SDI was in substantial compliance with applicable environmental laws and permitting requirements. See SAC ¶¶ 20-22. Plaintiffs further allege that on June 10, 1998 Defendant Vinke represented to Gaines Gwathmey that hazardous waste at SDI's Newhall facility had been and was being disposed of through a licensed treatment, storage, and disposal facility. See SAC ¶ 21.

Finally, Plaintiffs allege that SDI retained Levine-Fricke-Recon ("LFR"), an environmental consulting firm, to perform an environmental site assessment of SDI's Newhall facility on May 4 and May 8, 1998. See SAC ¶ 31. Plaintiffs allege that Defendants Treinen Jr. and Vinke specifically instructed Steve Skaggs, an SDI employee, to avoid showing the LFR representatives the portion of the Newhall facility where SDI was allegedly burning hazardous waste without required permits. See SAC ¶ 32. Plaintiffs allege that as a result, Defendants Treinen Jr. and Vinke caused LFR to prepare an assessment report dated May 20, 1998 that omitted any reference to SDI's unlawful disposal activities. See SAC ¶¶ 34-35. Plaintiffs allege that on June 15, 1998, Defendants provided Plaintiffs with a copy of LFR's report. See SAC ¶ 35.

1.    Plaintiffs' securities fraud claims

Plaintiffs' first and second causes of action are for violations of section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5. A successful federal securities

8

1 | fraud claim under section 10(b) or Rule 10b-5 requires (1) a

2 | misstatement or omission (2) of material fact (3) made with

3 | scienter (4) on which the plaintiff justifiably relied and (5) that

4 | proximately caused the plaintiff's investment loss.  See Gray v.

5 | First Winthrop Corp., 82 F.3d 877, 884 (9th Cir. 1996).

6 | The Private Securities Reform Litigation Act ("Reform Act"),

7 | which applies to securities fraud claims, requires that plaintiffs

8 | plead federal securities violations with heightened particularity.

9 | Under the Reform Act, for example, a plaintiff must "state with

10 | particularity facts giving rise to a strong inference that the

11 | defendant acted with the required state of mind."  15 U.S.C. § 78u-

12 | 4(b)(2).  The Ninth Circuit has held that a private securities

13 | plaintiff "must plead, in great detail, facts that constitute

14 | strong circumstantial evidence of deliberately reckless or

15 | conscious misconduct."  In re Silicon Graphics Inc. Sec. Litig.,

16 | 183 F.3d 970, 974 (1999).

17 | Silicon raises the specificity standard for pleading

18 | fraudulent intent to an unprecedented level of fact pleading.

19 | Identifying specific internal reports that contradict

20 | contemporaneous public statements is insufficient to meet the new

21 | standard.  See id. at 984.  Among other things, plaintiffs must

22 | supply a detailed description of the reports as well as such facts

23 | as may indicate their reliability.  See id. at 984-85.  Simply

24 | identifying the content of the report, the officers who received

25 | it, and the department that prepared it is insufficient.  See id.

26 | at 998 n.24 (Browning, J., dissenting).

27 |

28 | 9

1    Here, Plaintiffs have not met the rigorous standard relating
2  to scienter established by the Ninth Circuit as to Defendants
3  Treinen Sr., Cuthbert, and Vinke.  Although Plaintiffs have alleged
4  some facts from which Defendants' intentional misconduct can be
5  inferred, they have not alleged facts "in great detail" supporting
6  a "strong inference" of such misconduct.

7    For example, to establish scienter on the part of Defendant
8  Cuthbert, Plaintiffs allege that "between 1992 and 1996, Mr. Enger
9  had at least one conversation per year with Defendant Cuthbert and
10 corresponded with Defendant Cuthbert in writing regarding the
11 illegality of the burning of reactive wastes, which had been and
12 was being undertaken by SDI on SDI property, in the absence of an
13 Air Quality Management District ('AQMD') permit or a permit from
14 the California Department of Toxic Substances Control ("DTSC"),
15 called a 'Part B Permit,' and regarding the corresponding need to
16 apply for and obtain such permits."[4]  SAC ¶ 16.  Plaintiffs also
17 allege that Enger "frequently informed" Cuthbert of these facts
18 between 1996 and 1998.  See SAC ¶ 16.

19   Plaintiffs need to allege with greater specificity when Enger
20 conversed with and wrote to Defendant Cuthbert.  More importantly,
21 however, Plaintiffs fail to specify the circumstances under which
22 the communications took place.  For example, Plaintiffs do not
23 specify what Enger actually said or wrote, whether the
24 conversations took place over the telephone or in person, and if in

25

26    [4]Enger began working for SDI in late 1991 as a Safety
27 Engineer and later as a Facility Manager.  See SAC ¶ 16.

28                                10

person, where the conversations took place.  As to the period between 1996 and 1998, Plaintiffs do not even allege whether the communications were oral or written.  All of these facts, if properly pled, would bolster the reliability of Enger's alleged communications for the purpose of establishing scienter.

Similarly, to establish scienter on the part of Defendants Treinen Sr. and Vinke, Plaintiffs simply allege that "[f]rom 1996 to 1998, Mr. Enger frequently informed Defendants Treinen Sr. . . . and Vinke of the illegality of SDI's burning of reactive wastes on SDI's property in the absence of either the needed air permit or a Part B permit, of the corresponding need to apply for and obtain such permits, and other Environmental Protection Agency ("EPA") violations, including ground contamination and improper storage of hazardous wastes."  SAC ¶ 16.  Again, Plaintiffs have failed to plead whether Enger "informed" Defendants Treinen Sr. and Vinke in writing or orally, and if orally, whether the conversations took place over the telephone or in person.  In either case, Plaintiffs should be more specific as to the circumstances of the communications, including but not limited to when and where they took place, how often they took place, and what specifically was said or written.  Moreover, Plaintiffs fail to provide any specifics as to the alleged EPA violations.

Accordingly, to the extent Plaintiffs seek to hold Defendants Treinen Sr., Cuthbert, and Vinke liable for federal securities fraud violations relating to SDI's environmental compliance, Defendants' motions to dismiss are granted and Plaintiffs' first

1  and second causes of action are dismissed without prejudice and

2  with leave to amend as to those Defendants.[5]

3          2.   Plaintiffs' common-law fraud claims

4      To state a cause of action for common-law fraud, a plaintiff

5  must allege that the defendant made a knowing misrepresentation of

6  fact with the intent to deceive and that the plaintiff actually and

7  justifiably relied on the misrepresentation to his detriment.  See

8  Seeger v. Odell, 18 Cal. 2d 409, 414 (1941).   Intent is not a

9  requisite element of a negligent misrepresentation claim, in that

10 a defendant may be liable if he honestly but unreasonably believed

11 in the truth of the misrepresentation.  See Billy v. Arthur Young

12 & Co., 3 Cal. 4th 370, 407 (1992).

13     Federal Rule of Civil Procedure 9(b) requires that "[i]n all

14 averments of fraud or mistake, the circumstances constituting fraud

15 or mistake shall be stated with particularity."   FED. R. CIV. P.

16 9(b).   It is sufficient, however, to allege scienter generally.

17 See id.; In re Glenfed, Inc. Sec. Litig., 42 F.3d 1541, 1545 (9th

18 Cir. 1994).

19     A complaint complies with Rule 9(b) "if it identifies the

20 circumstances constituting fraud so that a defendant can prepare an

21 adequate answer from the allegations."   Moore v. Kayport Package

22 Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989).   Allegations in

23 _____

24     [5]Defendant Treinen Jr. does not argue that Plaintiffs failed
   to sufficiently plead scienter as to him.  Accordingly, the Court
25 does not consider that issue.  For the reasons stated in the
   Court's analysis of Plaintiffs' common-law fraud claims,
26 Plaintiffs' federal securities fraud claims are not dismissed as
27 to Defendant Treinen Jr.

28                                  12

a complaint must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1986). While mere conclusory allegations of fraud are insufficient, statements of the time, place, and nature of the alleged fraudulent activities are sufficient. See Wool v. Tandem Computers Inc., 818 F.2d 1433, 1439 (9th Cir. 1987). In other words, "the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading." Glenfed, 42 F.3d at 1548.

Rule 9(b) is satisfied most easily when there is direct evidence of the fraud, meaning "falseness is clear from the facts that had existed all along and were later revealed." Id. at 1549. In such cases, a plaintiff may simply set forth these facts, including allegations of time, place, and scienter, and satisfy Rule 9(b). See id. at 1548. Thus, a complaint alleging that the plaintiff bought a house from the defendant, that the defendant assured the plaintiff that the house was in perfect shape, and that the house was in fact built on a landfill or in a highly irradiated area, would satisfy Rule 9(b). See id.; Fecht v. The Price Co., 70 F.3d 1078, 1083 (9th Cir. 1995).

Here, the allegations in Plaintiffs' Second Amended Complaint satisfy Rule 9(b). Plaintiffs allege that Defendants represented throughout 1998 that SDI was in compliance with applicable environmental laws and permitting requirements. Plaintiffs further

1    allege that, at all relevant times, Defendants were aware of and
2    concealed the existence of unpermitted waste combusters located at
3    SDI's Newhall facility that had been and were being used unlawfully
4    to dispose of substantial quantities of excess explosive powder and
5    other hazardous or potentially hazardous products by burning.[6] See
6    SAC ¶¶ 16, 30, 32-34.  Finally, Plaintiffs allege that Defendants
7    knew the misrepresentations were false when made and that
8    Plaintiffs relied to their financial detriment on those
9    misrepresentations.  See SAC ¶¶ 15, 17-18, 27-28, 35-36, 42-43, 47-
10    48, 59.

11       Defendants make several arguments why Plaintiffs' fraud claims
12    should nevertheless fail.  None of these arguments are persuasive.
13    First, Defendants argue that the alleged misrepresentations in the
14    Confidential Information Memorandum, the Offering Memorandum, the
15    Merger Agreement, and the SEC filings are not properly attributed
16    to any particular defendant.  This lack of individuation, however,
17    does not render Plaintiffs' Second Amended Complaint defective.
18    Indeed, false or misleading information conveyed in prospectuses,
19    registrations statements, annual reports, press releases, or other
20    "group-published information" are presumed to be the collective

---

[6]Defendants object that Plaintiffs failed to specify which
laws were allegedly violated.  A complaint, however, is not
defective for this reason, even where a heightened pleading
standard applies.  See McHenry v. Renne, 84 F.3d 1172, 1179 (9th
Cir. 1996) (discussing rule in context of civil rights action).
In any event, Plaintiffs do allege that SDI operated burn units
without an AQMD permit and a DTSC "Part B Permit."

14

1   actions of the officers.[7]  See Wool, 818 F.2d at 1440; Schlagel v.

2   Learning Tree Int'l, 1998 WL 1144581, at *6 (C.D. Cal. Dec. 23,

3   1998).   The "group-pleading" or "group-published information"

4   doctrine applies where the individual defendants constitute a

5   narrowly defined group of officers who had direct involvement in

6   the day-to-day affairs of the corporation.  See Wool, 818 F.2d at

7   1440; Schlagel, 1998 WL 1144581, at *6.   Here, it sufficiently

8   appears from the Second Amended Complaint that Defendants Treinen

9   Sr., Treinen Jr., Cuthbert, and Vinke constitute a narrowly

10  tailored group of officers who had direct involvement in the day-

11  to-day affairs of SDI.   Indeed, these individuals were the

12  President and Chief Executive Officer, a Vice President, the

13  President of the Automotive Division, and the Chief Financial

14  Officer, respectively, of SDI.  See SAC ¶ 4.

15       Second, Defendants argue that any statements they made

16  regarding SDI's environmental compliance constitute non-actionable

17  opinions.   Even if Defendants' statements were opinions in the

18  abstract, however, the Court could not conclude as a matter of law

19  that they are insufficient to support Plaintiffs' fraud claims.

20  Where a party affirms an otherwise non-actionable opinion as an

21  existing fact material to a transaction, the statement becomes an

22  affirmation of fact.  See Crandall v. Parks, 152 Cal. 772, 776

23  (1908); WITKIN, SUMMARY OF CALIFORNIA LAW, § 681 (9th ed., Vol 5); see

24  also In re Wells Fargo Sec. Litig., 12 F.3d 922, 930 (9th Cir. 1993)

25  _____

26       [7]Regardless, it is apparent that Defendants Treinen Sr.,
    Vinke, and Cuthbert signed SDI's Form 10-K filed with the SEC.
27  See Pls.' Request Jud. Not., Ex. 1.

28                                  15

("Statements of . . . opinions, or beliefs are 'factual' for purposes of the securities laws, and thus are actionable under § 10(b), if . . . there is [no] reasonable basis for that belief [or] . . . the speaker is . . . aware of any undisclosed facts tending to seriously undermine the accuracy of the statement."). It appears clear from the allegations in Plaintiffs' Second Amended Complaint that Defendants' statements were intended as affirmations of an existing fact and were material to Plaintiffs' decision to acquire a controlling interest in SDI. Thus, Defendants' statements appear to constitute affirmations of fact.

Finally, Defendants argue that Plaintiffs cannot demonstrate that they justifiably relied on Defendants' alleged misstatements. The basis for Defendants' objection is essentially that Plaintiffs conducted their own due diligence investigation and therefore had an opportunity to discover SDI's allegedly unlawful burn activities.

Justifiable reliance, however, is ordinarily a question of fact. See Guido v. Koopman, 1 Cal. App. 4th 837, 843 (1992). Only when reasonable minds can reach no other conclusion may the question of reliance be decided as a matter of law. See id. Reliance is unreasonable as a matter of law when an investor closes his eyes to a known risk. See Atari Corp. v. Ernst & Whinney, 981 F.2d 1025, 1030-31 (9th Cir. 1992) (deciding issue of justifiable reliance on motion for summary judgment). For example, "[i]t is a well settled rule that where a party relies on his independent investigation after acquiring all the knowledge he desires without

1   hinderance, he will not be heard to say that he relied on the

2   representation of the other party." <u>Goodman v. Jonas</u>, 142 Cal.

3   App. 2d 775, 793 (1956).

4       Here, the Second Amended Complaint discloses that Plaintiffs

5   conducted an investigation into SDI's environmental compliance.

6   Plaintiffs also allege, however, that Defendants hindered that

7   process, either by representing to Plaintiffs' attorneys or

8   accountants that there were no substantial compliance problems or

9   by effectively causing the preparation of a misleading

10  environmental site assessment report.   Thus, the Court cannot

11  determine as a matter of law that Plaintiffs have failed to

12  demonstrate justifiable reliance.   To be sure, Defendants raise

13  questions of fact regarding the scope of Plaintiffs' investigation

14  and the reasonableness of their reliance, but those questions are

15  more appropriately decided on a motion for summary judgment, where

16  the factual record is more fully developed.

17      Accordingly, Defendants' motions to dismiss are denied as to

18  Plaintiffs' fourth through sixth causes of action for common-law

19  fraud.

20      B.   <u>Plaintiffs' Fraud Claims Relating to the Alleged
             Accounting Misstatement</u>

21

22      In addition to the environmental allegations, Plaintiffs

23  allege that Defendants overstated SDI's earnings by $638,000 for

    the fiscal year ending October 31, 1998.   The alleged overstatement
24
    resulted from the failure to record in SDI's financial statements
25
    and balance sheets a retroactive price discount agreement between
26
    SDI and TRW Vehicle Safety System Inc. ("TRW") that was signed on
27

28                              17

October 30, 1998 by Defendant Cuthbert.   See SAC ¶¶ 50-51.
Plaintiffs allege that Defendant Cuthbert intentionally failed to
record the price discount in order to inflate SDI's earnings.  See
SAC ¶ 52.   Plaintiffs further allege that in a December 8, 1998
letter to KPMG Peat Marwick, SDI's auditors, Defendants Treinen Sr.
and Vinke falsely represented that no material transactions were
left   unrecorded   in   SDI's   accounting   records   underlying   the
financial statements.  See SAC ¶ 51.  As a result of the omission
of the price discount, Plaintiffs allege that "SDI's earnings for
the fiscal year ending October 31, 1998 were significantly higher
than they actually were."  SAC ¶ 55.

    Plaintiffs'   fraud   claims   are   defective,   however,   because
Plaintiffs have failed to sufficiently plead the materiality of the
alleged accounting misstatement.   Whether an omission is material
"is   a   determination   that   requires   delicate   assessments   of   the
inferences a reasonable shareholder would draw from a given set of
facts and the significance of those inferences to him."  Fecht, 70
F.3d   at   1080   (internal   quotations   omitted).    To   be   sure,   this
assessment   is   typically   a   factual   inquiry   not   determined   as   a
matter of law.  See id. at 1081.  But where a complaint fails to
plead facts from which an inference of materiality can be drawn, a
trier of fact cannot make a conclusion one way or the other.

    Plaintiffs allege simply that the $638,000 omission caused
SDI's earnings to appear "significantly higher" than they actually
were.    This   allegation,   however,   is   the   type   of   conclusory
statement that Rule 9(b) was designed to prevent.  Plaintiffs need

18

1   to plead evidentiary facts that help explain why an omission of

2   $638,000 would be material to a reasonable investor. <u>See</u> <u>Glenfed</u>,

3   42 F.3d at 1548 & n.7. For example, Plaintiffs could allege the

4   amount of SDI's revenues or earnings for the fiscal year ending

5   October 31, 1998 and the amount by which revenues or earnings were

6   overstated as a result of the omission. <u>See</u> <u>Schlagel</u>, 1998 WL

7   1144581, at *6-*7; <u>Marksman Partners v. Chantal Pharmaceutical</u>

8   <u>Corp.</u>, 927 F. Supp. 1297, 1306 (C.D. Cal. 1996); <u>In re Gupta Corp.</u>

9   <u>Sec. Litig.</u>, 900 F. Supp. 1217, 1231 (N.D. Cal. 1994). Absent such

10  basic information, the Court has no way of knowing whether an

11  average investor would consider the alleged omission important.

12          Accordingly, to the extent Plaintiffs seek to hold Defendants

13  liable for the alleged accounting misstatement, Defendants' motions

14  are granted and Plaintiffs' first, second, fourth, fifth, and sixth

15  causes of action are dismissed without prejudice and with leave to

16  amend.[8]

17          C.   <u>Plaintiffs' RICO Claim</u>

18          Plaintiffs' third cause of action is for a violation of the

19  Racketeer Influenced and Corrupt Organizations Act ("RICO"). To

20  _____

21          [8]Plaintiffs' first and second causes of action for federal
    securities fraud are also defective as to Defendants Treinen Sr.,

22  Treinen Jr., and Vinke because Plaintiffs have failed to plead
    facts in great detail supporting a strong inference that these

23  defendants acted with the requisite scienter. Indeed, Plaintiffs
    have not pled any facts demonstrating that these defendants were

24  aware of the TRW price discount agreement.

25          In addition, if Plaintiffs were unaware of the TRW price

26  discount agreement and/or its effects on SDI's earnings before
    the recapitalization of SDI was completed on December 15, 1998,

27  they should so indicate in an amended pleading.

28                                  19

1  prevail on a RICO claim, a plaintiff must establish a "pattern of

2  criminal activity." 18 U.S.C. § 1962. At a minimum, a "pattern"

3  requires that the predicate criminal acts be "related" and

4  "continuous." H.J. Inc. v. Northewewstern Bell Tel. Co., 492 U.S.

5  229, 239 (1989). In terms of the continuity requirement, a RICO

6  plaintiff must allege either a "closed-ended" pattern, in which the

7  criminal conduct "extended over a substantial period of time," or

8  an "open-ended" pattern, in which the predicate acts "include a

9  specific threat of repetition extending indefinitely into the

10  future." Id. at 242.

11      Plaintiffs allege that they were the victims of numerous

12  predicate acts, consisting of mail and wire fraud, extending over

13  a period of eleven months. See SAC ¶¶ 72-73. Plaintiffs, however,

14  have failed to demonstrate that Defendants' conduct constitutes a

15  pattern of racketeering activity.

16      First, Plaintiffs have not established open-ended continuity

17  because they have not demonstrated that Defendants' conduct carried

18  with it the threat of future criminal activity. Defendants'

19  efforts were allegedly directed towards inducing Plaintiffs to

20  acquire a controlling interest in SDI. Once the transaction

21  closed, the alleged fraud was complete. See Medallion Television

22  Enters. v. SelecTV of California, Inc., 833 F.2d 1360, 1363-64 (9th

23  Cir. 1988) (finding no threat of continuing illegal activity where

24  predicate acts concerned a single, fraudulent inducement to enter

25  joint venture contract); Lipin Enters. Inc. v. Lee, 803 F.2d 322,

26  324 (7th Cir. 1986) (fraudulent representations inducing sale of

27

28                              20

1  stock did not constitute a pattern of racketeering activity).

2      Second, Plaintiffs have not established closed-ended
3  continuity because they have not demonstrated that Defendants'
4  predicate acts extended over a substantial period of time.  In
5  Allwaste, Inc. v. Hecht, the Ninth Circuit rejected a bright-line
6  rule that predicate acts for the purposes of closed-ended
7  continuity must extend for at least one year.  See 65 F.3d 1523,
8  1528 (9th Cir. 1995).  In Hecht, the court held that allegations
9  that the predicate acts "occurred over a substantial period of
10 time, as much as thirteen months" was sufficient to survive a
11 motion to dismiss.  Id.  In Religious Technology Center v.
12 Wollersheim, however, the Ninth Circuit also held that "[a] pattern
13 of activity lasting only a few months does not reflect the 'long
14 term criminal conduct' to which RICO was intended to apply."  971
15 F.2d 364, 367 (9th Cir. 1992) (citing H.J. Inc., 492 U.S. at 242).
16 In support of that proposition, the court cited a Third Circuit
17 case holding that a fraudulent scheme lasting eight months directed
18 at a single entity did not meet the continuity test.  See id.
19 (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1418
20 (3rd Cir. 1991)).  Based on these cases, it does not appear that
21 predicate acts extending over a period of eleven months satisfies
22 the closed-ended continuity test.  See China Trust Bank of New York
23 v. Standard Chartered Bank, 981 F. Supp. 282, 287 (S.D.N.Y. 1997)
24 ("[A]n eleven month period of predicate activity does not
25 constitute a sufficient pattern.").

26     Accordingly, Defendants' motions to dismiss are granted and

27

28                              21

1  Plaintiffs' third cause of action for a violation of RICO is
2  dismissed with prejudice.

3  **III. Defendants' Joint Motion to Strike**

4       Defendants jointly move to strike the following language from
5  paragraphs 65, 70, 87, 93, and 99 of Plaintiffs' Second Amended
6  Complaint: "[Plaintiffs] have incurred costs and expended sums in
7  excess of the jurisdiction of this Court and are continuing to
8  incur further costs to bring SDI from a state of noncompliance with
9  environmental   laws,   regulations,   ordinances,   permitting
10  requirements  and  building  code  requirements,  to  a  state  of
11  verifiable and assured compliance."  Defendants argue that the
12  costs incurred by SDI to ensure compliance with applicable
13  environmental laws reflect damages to SDI, not to shareholder
14  Plaintiffs.  Defendants' argument is without merit.

15      In general, a shareholder does not have standing to bring an
16  action on his own behalf to redress an injury to the corporation.
17  See Von Brimer v. Whirlpool Corp., 536 F.2d 838, 846 (9th Cir.
18  1976).  An exception to this rule arises, however, when the injury
19  is to the plaintiff individually, "'as where the action is based on
20  a contract to which he is a party, or on a right belonging
21  severally to him, or on a fraud affecting him directly.'"  Id.
22  (quoting Sutter v. General Petroleum Corp., 28 Cal. 2d 525, 530
23  (1946)) (emphasis added).

24      Here, Plaintiffs do not allege that SDI was damaged by
25  Defendants' fraud.  Rather, Plaintiffs allege that Defendants
26  defrauded them into paying more for a controlling interest in SDI

27

28                                22

than that interest was actually worth.  Plaintiffs allege that had SDI been in compliance with applicable environmental laws, as Defendants represented, Plaintiffs would not have purchased SDI stock at a price far in excess of its actual value.  Thus, the cost of bringing SDI into environmental compliance directly relates to the damages sustained by Plaintiffs.

The Court does not read the contested language to mean that Plaintiffs, as majority stockholders, are entitled to all costs incurred by SDI to ensure environmental compliance.  But Plaintiffs would be entitled to such costs to the extent they reflect the difference in value between what Plaintiffs invested in SDI and what they should have invested at closing based on SDI's lack of compliance.[9]  Accordingly, the Court denies Defendants' motion to strike.

## IV.   Defendants' Joint Motion for Judicial Notice

Defendants move the Court to take judicial notice of various documents, most of which are referred to in the Second Amended Complaint.  The Court denies the motion as to two of the documents for which judicial notice is sought, neither of which were referenced in the Second Amended Complaint.

---

[9]In addition, as the Court construes them, Plaintiffs' fraud claims are based only on SDI's alleged operation of burn units without AQMD and DTSC permits, not on any other environmental violations that may have existed.  Thus, Plaintiffs clearly are not entitled to recover costs necessary to achieve compliance with "environmental laws, regulations, ordinances, permitting requirements and building code requirements" to the extent such compliance is not related to the alleged operation of unpermitted burn units.

1    Exhibit 8 is a Form S-4 Registration Statement filed by SDI

2  with the SEC on April 8, 1999. Because the transaction at issue in

3  this case closed in December 1998, Exhibit 8 is not relevant to the

4  allegations of fraud in the Second Amended Complaint.

5    Exhibit 9 is a page from the Paul Weiss website detailing the

6  biography of Gaines Gwathmey. Exhibit 9 does not contain the kind

7  of information that is "capable of accurate and ready determination

8  by resort to sources whose accuracy cannot be reasonably

9  questioned." FED. R. EVID. 201(b)(2).

10    Accordingly, the Court does not take judicial notice of

11  Exhibits 8 and 9. The Court, however, does take judicial notice of

12  Exhibits 1 through 7.

13

14    IT IS SO ORDERED.

15

16  DATED:    June 9, 2000

17

18                              _____
                                WILLIAM J. REA
19                              United States District Judge

20

21

22

23

24

25

26

27

28                              24